# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

JOSH CLARK

CRIMINAL COMPLAINT

CASE NUMBER: 1:15-mj-783

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On the dates specified within the attached Affidavit, in the Southern District of Indiana and elsewhere, defendant did,

1. Count 1 – Distribution and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2);

I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Michael Johnson, Special Agent
Homeland Security Investigations

Sworn to before me, and subscribed in my presence

October 29, 2015
**Date**

at   Indianapolis, Indiana

_____
Denise K. LaRue, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

_____
**Signature of Judicial Officer**

# AFFIDAVIT

I, Task Force Officer Michael Johnson, being duly sworn, depose and state as follows:

1. **Affiant**: I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"). I am currently assigned to the Office of the Resident Agent in Charge, Indianapolis, Indiana (RAC/IP). I have been employed as a Special Agent with HSI since February of 2006. Before being appointed as a Special Agent with HSI, I was a Police Officer for the City of Indianapolis for approximately eleven years. The last four years, I was assigned to a federal task force. During my experience with both agencies, I have been involved in numerous investigations, including those involving production, advertising, distribution and possession of child pornography. I have had training through the Federal Law Enforcement Training Center, HSI, the Indiana State Police, Office of Juvenile Justice Prevention, the United States Attorney's Office, and Project Safe Childhood in investigating computer related crimes and child exploitation. Since being employed with HSI, I was temporarily assigned to HSI's Cyber Crimes Center (C3). During that assignment, I worked on active undercover cyber investigations as well as the cataloging of over 10,000 images and videos of child pornography. I have been involved in over one-hundred investigations pertaining to the sexual exploitation of children.

2. **Information provided**: The statements in this affidavit are based in part on information provided by the persons listed below. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant and criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that **JOSH CLARK** has committed the following offense:

1

      a.      **Count 1: -Distribution and Receipt of Child Pornography** 18 U.S.C. §§ 2252(a)(2)

    3.      **Requested action**: I make this affidavit in support of an application for an arrest warrant for **JOSH CLARK** for violating the above listed statute.

    4.      **Distributing and Receiving Child Pornography**: This investigation concerns also alleged violations of 18 U.S.C. § 2252 which prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depictions of minors using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means including by computer, where the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such depiction was of such conduct.

    5.      **Definitions**: The following definitions apply to this Affidavit and its Attachments:

      a.      The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

      b.      The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

      c.      The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of

conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

    d.    The term "sexually explicit conduct" means actual or simulated:

        1)    Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same sex or opposite sex;

        2)    Masturbation;

        3)    Sadistic or masochistic abuse; or

        4)    Lascivious exhibition of the genitals or pubic area of any person.

    e.    The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

    f.    The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where 1) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; 2) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or 3) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

    g.    The terms "records," "documents," and "materials," as used herein,

3

include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

6. **The Investigation**: JOSH CLARK was a resident of Indianapolis, in the Southern District of Indiana. CLARK used an online messaging service through Kik. On December 10, 2014, Agent Michael Spadafora (**AGENT**) of the Brevard County, Florida Sheriff's Office began investigating activities of Kik user **jclark2897**. Through subsequent search warrants, user jclark2897 was determined to be **CLARK**. While using Kik in an undercover capacity, AGENT received an instant message from a person with a user name jclark2897 who appeared on screen as "josh clark" and would identify himself in chats as "josh" from "indy." (**CLARK**).

7. **December 10, 2014 chat**: CLARK started the conversation by saying "hi I enjoy all." AGENT responded "nice same here single straight dad with a 13yo." CLARK said he

4

was married and had two girls ages 3 and 12 years-old. **AGENT** asked if **CLARK** was active with them, to which **CLARK** replied he wished and asked if the **AGENT** was active with the **AGENT's** fictitious daughter.

    a.    As the conversation continued, **CLARK** asked AGENT "how young u like". **AGENT** responded "like 5 and up".

    b.    **CLARK** sent two image files to the **AGENT** which were screen captured by the **AGENT**:

        1.    **IMAGE 1:** The first image depicts a nude pre-pubescent female child. The victim is on her knees and bent over with her chest lying on the floor. An adult male is inserting his left index finger into the child's vagina.

        2.    **IMAGE 2:** The second image was that of a pre-pubescent female child performing oral sex on an adult male.

    c.    **CLARK** also sent three (3) other images to **AGENT** which show girls engaged in sexually explicit conduct.

        1.    **IMAGE 3:** The third image shows a girl who appears to this affiant to be a minor. The female child is standing up and wearing an unbuttoned shirt and is nude from the waist down. Her genital area is lasciviously displayed.

        2.    **IMAGES 4 AND 5**; Images 4 and 5 show females engaged in sexually explicit conduct; however, this affiant cannot determine whether the girls are minors.

    d.    **CLARK** repeatedly asked **AGENT** to send **CLARK** images and video of **AGENT**'s 13 year old daughter and expressed to **AGENT** that **CLARK** was aroused.

    e.    **AGENT** told **CLARK** that **AGENT** could not send images because **AGENT** was on a computer and could not upload from his gallery. **CLARK** attempted to direct **AGENT** on how to do this and suggested that **AGENT** use a cell phone.

    f.    **AGENT** told **CLARK** that **AGENT** only had a work cell phone.

    g.    **CLARK** suggested that **AGENT** "install and erase after," meaning that the **AGENT** would install the Kik App on his work cell phone, send **CLARK** images of **AGENT**'s daughter, and then erase after sending.

8.    <u>**December 19, 2014 chat**</u>:  On 12-19-2014, **CLARK** chatted with the **AGENT**.

    a.    During the conversation, **CLARK** chatted with who he believed was the **AGENT'S** 13 year-old daughter (fictitious).

    b.    **CLARK** told the "child" that he was "horny," that he was masturbating, and **CLARK** asked the "child" explicit questions about her anatomy.

    c.    **CLARK** asked **AGENT'S** child (fictitious) "wanna suck daddys cock while me and him talk".

9.    <u>**December 22, 2014 chat**</u>:  On 12/22/2014, **CLARK** again chatted with **AGENT** by means of Kik Messenger. **CLARK** inquired about **AGENT'S** ability to send images to **CLARK**. **AGENT** told **CLARK** that **AGENT** was still unable to send.

10.    <u>**January 5, 2015 chat**</u>:  On 01-05-2015, **CLARK** chatted with **AGENT**.

  a. During the chat, CLARK sent 5 image files to AGENT.

    1. **IMAGE 6 AND 7:** Images 6 and 7 both shows the lasciviously displayed genitals of females. This affiant is unable to determine whether the image shows the genitals of a minor child.

    2. **IMAGE 6:** After CLARK distributed Image 6 to AGENT, CLARK wrote "show her that pic" referring to AGENT'S 13 year old daughter. The image depicts a nude female on her knees on the bed. Her genital area is visible to the camera. CLARK then sent Image 7 to AGENT and asked if the daughter liked the image.

    3. **IMAGES 7, 8, and 9:** Images 7, 8, and 9 all show the females engaged in sexually explicit conduct; however, this affiant cannot determine the ages of the girls in the images.

  b. CLARK continued to ask AGENT about getting images of AGENT's 13 year old daughter. CLARK asked AGENT if CLARK could speak with the daughter by phone. AGENT told CLARK that AGENT traveled for work with his daughter and that the only way AGENT would let CLARK see AGENT's daughter was in person.

  c. AGENT offered to email CLARK but CLARK said that he did not have email. CLARK asked AGENT to send him images of AGENT's daughter in a bra and panties if CLARK can get email. AGENT refused

11. **January 6, 2015 chat:** On 1/6/2015, CLARK continued to chat by Kik Messenger with AGENT.

  a. CLARK distributed 4 images to AGENT:

7

1. **IMAGES 10, 11, AND 12**: Images 10, 11, and 12 all display females engaged in sexually explicit conduct; however, this Affiant cannot determine whether the girls are minor children.

2. When **CLARK** asked **AGENT** if he liked the images, **AGENT** responded "yeah like younger tho." **CLARK** then distributed Image 13 to **AGENT**.

3. **IMAGE 13**: Image 13 shows a close-up of the female genital area. Based on this Affiant's training and experience, the image appears to show a minor child.

b. During the chat, **CLARK** indicated that **CLARK** has seen the genital area of his twelve (12) year-old daughter while she was sleeping. **CLARK** went on to say "want to cum on her but don't wanna get caught". **CLARK** described additional sexual conduct with the 12 year old daughter, writing to **AGENT** "Ya I touch and lick a little"; "wanna put a finger in"; and "no I only put my tongue on ot (*sic*) once".

c. **CLARK** also described his two (2) year-old daughter as "up and coming" and asked **AGENT** at what age **AGENT** would recommend that he begin sexual conduct. **AGENT** said it depended on the girl.

d. **CLARK** ended his communication with **AGENT** by telling **AGENT** to "keep her pussy warm," referring to **AGENT**'s daughter.

8

12. **CLARK** distributed to the **AGENT** by means of Kik Messenger, images of nude or partially clothed minors engaging in sexually explicit conduct. **CLARK** knew that the minors depicted in these images were under the age of 18 years.

13. **CLARK** was interviewed by this affiant on or about January 15, 2015. **CLARK** admitted the following to this affiant:

   a. **CLARK** was the individual who would communicate with the **AGENT** in the above-referenced messages.

   b. **CLARK** has had a Kik account for about three (3) years when **CLARK** began searching pornographic sites and used the Omegle chat website. An online user told him about Kik and he downloaded Kik after that.

   c. **CLARK** acknowledged that through Kik, he would trade images that he believed were child pornography with other users. Those users would send child pornography images to him and he would distribute child pornography images to others. **CLARK** said that he would "trade back and forth" and that he knew that it was wrong. **CLARK** said that he began viewing child pornography about 5-6 months after he found the site.

   d. **CLARK** would receive images, save them to the gallery on his phone, and would send them to others. **CLARK** said he would erase photos.

   e. **CLARK** admitted that he became sexually interested in child pornography when he was 25-26 years old, which was about 8 years before this interview.

   f. **CLARK** acknowledged distributing the images in question to the **AGENT**.

   g. Through Internet file distribution sources, **CLARK** obtained and provided the **AGENT** with visual depictions of minors engaging in sexually explicit conduct.

9

      This child pornography was commercially made by other persons unrelated to **CLARK**. **CLARK** would receive these images through messaging services and would distribute those images to the **AGENT**.

h.   **CLARK** used these images to engage the **AGENT** in sexually explicit messaging about a person who **CLARK** believed to be the thirteen (13) year old daughter of the **AGENT**.

i.   **CLARK** engaged in direct Kik message communication with the person **CLARK** believed to be the **AGENT**'s 13 year old daughter. During messaging with the perceived 13 year old daughter, **CLARK** encouraged the perceived child to perform a sex act on the **AGENT**.

j.   **CLARK** admitted that he had told the **AGENT** that he had molested his daughter and had seen her vagina; however **CLARK** told this Affiant that this was all fantasy and that none of this actually happened.

14.   **Interstate and Foreign Commerce**: From my training and experience, I know that the internet is a facility of interstate and foreign commerce. The use of Kik requires the use of facilities of interstate or foreign commerce. **CLARK** communicated with the **AGENT** who was located in Florida.

15.   **Conclusion**: Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that **CLARK** has committed the offense described above and I request the Court to issue a Complaint and Arrest Warrant for such offenses.

Further Affiant Sayeth Naught.

_____
Special Agent Michael Johnson
Homeland Security Investigations

Subscribed and sworn to before me on October 29th, 2015

_____
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

11